UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

RICHARD TODD WELLS,        )
                           )
         Plaintiff,        )        Civil No. 0: 14-33-HRW
                           )
v.                         )
                           )
STEVEN CONROTTO, M.D., et al., )    **MEMORANDUM OPINION**
                           )        **AND ORDER**
         Defendants.       )

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court upon the motions to dismiss the complaint filed by defendants Dr. Steven Conrotto and Nurse Service Administrator Heather Nickell [D. E. No. 10] and Dr. Doug Crall. [D. E. No. 23] Plaintiff Richard Todd Wells filed a response in opposition to the former motion [D. E. No. 19] but did not respond to the latter motion. Conrotto and Nickell filed a reply in further support of their motion [D. E. No. 21], and the time for further briefing has expired. This matter is therefore ripe for decision.

**I**

Wells is a prisoner currently confined at the Kentucky State Reformatory in LaGrange, Kentucky. On February 25, 2014, Wells filed a complaint asserting civil rights claims pursuant to 42 U.S.C. § 1983 and a claim under the Americans

1

with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). [D. E. No. 1] In his complaint, Wells explains that he has lower back problems and suffers from degenerative disc and joint disease. As a result, he indicates that he walks with a cane, and while in prison has typically been assigned to a cell on the bottom floor, and the lower bunk bed within the cell. [D. E. No. 1, pp. 2-3]

On July 27, 2012, Wells was transferred to the Eastern Kentucky Correctional Complex in West Liberty, Kentucky ("EKCC"), and was again assigned to a lower bunk in a cell on the first floor. [D. E. No. 1, p. 2] However, Wells alleges that in October 2012, he was reassigned to a cell on an upper floor, which would require him to climb three flights of stairs - up to five times a day - for meals and pill calls. When he complained to medical staff, nurse Madden told him that nurse Nickell informed her that Wells must accept the reassignment or face disciplinary sanctions. Wells accepted the upper floor cell. *Id.* at p. 3.

On October 15, 2012, Dr. Conrotto agreed to file a request to have Wells transferred to a single-story prison, but indicated he didn't have the authority to assign him to a new cell. Wells states that Dr. Conrotto filed the request for a prison transfer as he had stated he would, but alleges that on November 1, 2012, nurse Nickell told Wells that she had "canceled" the request "[b]ecause I can." [D. E. No. 1, p. 4]

On February 26, 2013, Wells fell down 10-12 steps when his right hip "gave out on me." Wells indicates that he suffered a sprain to his left shoulder, a bruise in his right shoulder, a chipped tooth, and a laceration to his lip. He was taken to a hospital where a CT scan showed a herniated disc, a right hip pointer, and a large bone spur at L5-S1. Wells was transported back to EKCC shortly thereafter with a prescription for Lortab for pain management and use of a walker. Several days later during a visit, Wells indicates that Dr. Conrotto told him that he would definitely be transferred to a "level facility" (a single-story prison). [D. E. No. 1, p. 5] On March 8, 2013, Wells was transferred to the Green River Correctional Complex in Central City, Kentucky ("GRCC").

Shortly before his transfer, on March 4, 2013, Wells filed a medical grievance complaining that it was improper to have assigned him to a cell on an upper floor in light of his back problems and limited mobility. This grievance was denied for informal resolution, and formally denied by the Health Care Grievance Committee, both in light of Wells's intervening transfer to a single-story facility. Dr. Crall, the Medical Director of the Kentucky Department of Corrections, denied Wells's appeal for the same reason on April 16, 2013. [D. E. No. 1, pp. 24-35]

Wells also alleges that shortly after he arrived at GRCC, staff confiscated his cane and walker, and his prescription for Lortab was discontinued. [D. E. No. 1, pp. 5-6] He indicates that he stopped taking his "psych meds" because his back

3

condition prevented him from standing in the pill call line the 30-40 minutes necessary to receive his prescription. He further alleges that he was still housed on an upper walk of GRCC, and that Dr. Crall "had the final say so on this issue." [D. E. No. 1, p. 6] Wells does not allege that he suffered any injury at GRCC due to his housing assignment. Wells was subsequently transferred to the Kentucky State Reformatory in April 2014 shortly after he filed this action. [D. E. No. 11]

## II

In their motion to dismiss, Dr. Conrotto and nurse Nickell contend that (1) Wells's claims under the Eighth Amendment and the ADA are barred by the applicable statutes of limitation; (2) Wells did not timely and properly exhaust his Eighth Amendment claims; and (3) they are not "public entities" subject to the requirements of the ADA. [D. E. No. 10-1, p. 4]

### A

These defendants first contend that Wells's claims are time-barred. They begin with the supposition that "[t]he basis of Wells' claims against Defendants is that they refused him a bottom floor cell while he was at EKCC." If so, they continue, that claim accrued at some point between October 15, 2012, when Dr. Conrotto declined Wells's request for transfer to a different institution, and November 1, 2012, when nurse Nickell allegedly canceled Wells's transfer. [D. E. No. 10-1, pp. 5-6] Nonetheless, Wells did not file a grievance on this matter until

four months later on March 4, 2013, shortly after he fell traversing the stairs as a result of his upper level cell assignment. It took 43 days, to April 16, 2013, to complete the grievance process, during which the limitations period was tolled while Wells exhausted his administrative remedies. These defendants contend Wells was required to file suit on or before December 13, 2013, which is one year and 43 days after November 1, 2012. [D. E. No. 10-1, pp. 6-7]

The Court disagrees. The events about which Wells complains occurred in Kentucky; therefore, Kentucky's one-year statute of limitations for asserting personal injuries applies. Ky. Rev. Stat. Ann. § 413.140(1)(a); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003). Here, giving Wells's allegations the liberal construction to which he is entitled when evaluating a motion to dismiss, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), his claim appears to be not merely that he was dissatisfied with his upper level cell assignment, but that such assignment was a cause of his fall on February 26, 2013. He filed a grievance on this claim six days later on March 4, 2013,[1] which was denied 43 days later on April 16, 2013. Because Wells's claim would have accrued upon his February 26, 2013, fall and injury, his complaint would have to be filed on or before one year and 43 days after February 26, 2013, which falls on April 10, 2014. Wells's

---

[1] The grievance form states that March 4, 2013, was the date the grievance was "resubmitted" [D. E. No. 1, p. 24], which suggests the grievance was originally filed before this date.

complaint, while docketed on March 4, 2014, is deemed filed on February 25, 2014,[2] [R. 1, p. 41], and was therefore timely filed approximately six weeks prior to the expiration of the limitations period. The Court must therefore deny the motion to dismiss the complaint on this ground.

### B

These defendants next contend that Wells failed to properly exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Under KDOC's Corrections Policy and Procedures ("CPP"), an inmate must file a grievance regarding matters related to his or her health care within five working days after the incident or decision occurs, and must identify the individuals involved. CPP 14.6 §§ II(K)(1)(a)(2), (1)(a)(4) (August 1, 2014). These defendants contend that Wells's grievance did not adequately set forth the facts and events which formed the basis for his complaint, and that he did not file his grievance until four months after the events in October and November 2012, well outside the five-day period permitted. [D. E. No. 10-1, p. 8-9] They therefore argue that he failed to properly

---

[2] A prisoner's complaint is deemed filed on the date it is delivered to prison officials for mailing. Absent evidence to the contrary, the Court presumes this occurred on the date the complaint is signed. *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) ("a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court. ... absent contrary evidence, a prisoner does so on the date he or she signed the complaint.").

exhaust his administrative remedies as required by federal law. See *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

Again, the Court must respectfully disagree. While it is plain that by October 25, 2012, Wells was not happy about the change in his cell assignment to an upper floor, the claim that he asserts in his complaint is that it was the refusal of these defendants to change this cell assignment which caused his injuries on February 26, 2013. Wells therefore had five working days, to the following Tuesday on March 5, 2013, to file his grievance. Wells's March 4, 2013, grievance was therefore timely filed under CPP 14.6 § II(K)(1)(a)(2).

In addition, Wells identified nurse Nickell and Dr. Conrotto by name in his grievance form [D. E. No. 1, pp. 25-26], thus satisfying the requirements of CPP 14.6 § II(K)(1)(a)(4). While these defendants contend that Wells's grievance did not describe all of the same events that he now sets forth in his complaint as a basis for his claim [D. E. No. 10-1, p. 9], federal law does not require such particularity in administrative grievances, as generally a grievance must merely apprise prison officials of the nature of the wrong complained of. *Pruitt v. Holland*, No. 10-CV-111-HRW, 2011 WL 13653, at *4-6 (E.D. Ky. Jan. 4, 2011).[3] Wells's grievance was therefore timely and properly filed.

---

[3] It should be separately noted that because exhaustion of administrative remedies is an affirmative defense, it is subject to defenses such as waiver or estoppel. *Ruggiero v. County of Orange*, 467 F. 3d 170 176-78 (2d Cir. 2006). While these

7

## C

The defendants next contend that Wells's claims against them under the ADA must be dismissed because they are not "public entities" subject to 42 U.S.C. § 12132, and hence are not subject to the prohibition from excluding disabled persons from participating in activities or otherwise discriminating against him under Title II of the ADA. [D. E. No. 10-1, p. 10-11]

A "public entity" subject to the ADA is "(A) any State or local government; and (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; ..."). 42 U.S.C. § 12131. Thus, the ADA does not apply to individuals, whether wholly private citizens or government officials sued in their individual capacities. *Williams v. McLemore*, 247 F. App'x 1, 6 (6th Cir. 2007) (holding that the "ADA does not provide for personal liability for defendants sued in their individual capacities"); *Cuco v. Federal Medical*

---

defendants now challenge Wells's grievances as untimely and insufficiently specific, the KDOC never raised such procedural objections during the grievance process. Because KDOC chose to address the substance of his grievance, it deprived Wells of any opportunity to rectify any now-perceived shortcoming in the grievance. There is considerable reason to doubt whether, under such circumstances, these defendants may assert noncompliance with KDOC's grievance process where it is plain that KDOC waived, or would be estopped from asserting, any procedural objection to Wells's grievance. *Cf. Ross v. County of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004) ("If a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court."), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

*Center – Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *41 (E.D. Ky. 2006), *aff'd*, 257 F. App'x 897 (6th Cir. 2007); *Miller v. King*, 384 F.3d 1248, 1276 (11th Cir. 2004) ("the plain language of the statute applies only to public entities, and not to individuals .... the natural meaning of § 12132 is that liability extends only to public entities and not to persons in their individual capacities."). The ADA claims against these defendants must therefore be dismissed with prejudice.[4]

### III

Dr. Crall has filed a separate motion to dismiss Wells's complaint against him. Dr. Crall contends that Wells's complaint makes no allegations against him, does not claim that his rights or any laws were violated, and does not request any form of relief or damages. [D. E. No. 23, p. 1] Wells has filed no response opposing this motion.

Dr. Crall's contentions are without merit. In his complaint, Wells alleges that Dr. Crall was ultimately responsible for the decision to house him on the upper walk of GRCC. [D. E. No. 1, p. 6] Wells claims that all of the defendants acted

---

[4] These defendants also assert that because they are merely health care professionals employed by a private company under contract to perform medical services at EKCC, they had no authority to designate the cell in which Wells would be housed, and thus presumably could not be a cause of his injuries. [D. E. No. 10-1, p. 2 n.4; p. 6 n.6] Because these contentions do not form a basis for their motion to dismiss the complaint, the Court reaches no conclusions at this juncture regarding the viability of Wells's claims when tested against such assertions.


with deliberate indifference in violation of the Eighth Amendment, violated his due process rights in violation of the Fourteenth Amendment, and violated the ADA. *Id.* at p. 8. Wells's complaint includes a request for injunctive relief, nominal damages, as well as $450,000.00 in compensatory and punitive damages against each of the defendants. [D. E. No. 1, pp. 39-40] Dr. Crall's motion therefore presents no basis to grant the relief requested, and will be denied.

Nonetheless, the Court has an independent and ongoing duty to dismiss any claim filed by a plaintiff proceeding *in forma pauperis* and/or a prisoner pursuing a claim against a government official if that claim fails to state a viable claim for relief or seeks damages against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

As noted above, the "ADA does not provide for personal liability for defendants sued in their individual capacities," *Williams v. McLemore*, 247 F. App'x 1, 6 (6th Cir. 2007), and Wells's ADA claim against Dr. Crall must therefore be dismissed for failure to state a claim.

Further, upon additional review, the sole constitutional claim that Wells makes against Dr. Crall is that he "had the final say so" on the decision to house him on an upper floor of GRCC. [D. E. No. 1, p. 6] Such an allegation is insufficient to implicate Dr. Crall's personal involvement in a constitutional violation. In order to recover against a given defendant for a claimed

constitutional violation, the plaintiff "must allege that the defendant [was] personally involved in the alleged deprivation of federal rights." *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (*citing Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976)). The mere fact that the defendant is a supervisor of the person who actually made the decision or took the action in question is not enough: *respondeat superior* is not an available theory of liability in a civil rights claim. *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981). See *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("[i]n a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer."). And even if the "final say so" to which Wells refers was the denial of an inmate health care grievance on this issue, that denial does not qualify as the sort of personal involvement with the conduct underlying the grievance required for liability to attach. *Alder v. Corr. Medical Services*, 73 F. App'x. 839, 841 (6th Cir. 2003) ("The mere denial of a prisoner's grievance states no claim of constitutional dimension."); *Martin v. Harvey*, 14 F. App'x 307, 309-10 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). The Court will therefore deny Wells's claims against Dr. Crall with prejudice.

## IV

Having partially denied Dr. Conrotto and nurse Nickell's motion to dismiss the complaint, they will now file an answer to the complaint within the time permitted by Federal Rule of Civil Procedure 12(a)(4)(A). Federal Rule of Civil Procedure 26 would ordinarily require the parties to provide certain initial disclosures to each other and to confer on a proposed discovery plan prior to the parties initiating discovery, but *pro se* prisoner actions are exempt from these requirements. Fed. R. Civ. P. 26(a)(1)(B)(iv). Additionally, the Court would enter a scheduling order setting certain time limits for discovery in accordance with Federal Rule of Civil Procedure 16; however, the Rule permits the Court to exempt certain categories of actions pursuant to local rule, and this Court has exempted *pro se* prisoner actions from the requirements of this Rule. See LR 16.1(c). The Court will therefore refer this matter to a magistrate for pretrial management.

Accordingly, **IT IS ORDERED** that:

1. Dr. Conrotto and nurse Nickell's Motion to Dismiss [D. E. No. 10] is **GRANTED IN PART** and **DENIED IN PART**.

2. Wells's claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* [D. E. No. 1] are **DISMISSED WITH PREJUDICE**.

3. Dr. Crall's Motion to Dismiss [D. E. No. 23] is **DENIED**.

4. Wells's claims against Dr. Crall are **DISMISSED WITH PREJUDICE**.

5. Pursuant to 28 U.S.C. § 636(b), this matter is **REFERRED** to a United States Magistrate Judge to conduct all further proceedings, including preparing proposed findings of fact and recommendations on any dispositive motions.

6. The Clerk of the Court shall **ASSIGN** this matter to a Magistrate Judge.

This 6th day of January, 2015.



Signed By:
*Henry R. Wilholt, Jr.*
**United States District Judge**